# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        **v.**                      **Case No. 26-CR-35**

**ANHUAR S. GARCIA-TARABAY, et al.,**

        **Defendants.**

## ORDER

The grand jury in this district returned an indictment charging Anhuar S. Garcia-Tarabay with conspiracy to distribute 500 or more grams of methamphetamine. (ECF No. 1.) Law enforcement arrested Garcia-Tarabay in the Central District of California, and following a detention hearing, the court there ordered him released to appear in this district as required subject to a $100,000 appearance bond guaranteed by promises of three family members and his mother serving as a third-party custodian.

The Central District of California granted the government's motion to stay that order setting conditions of release. (ECF No. 19.) The government subsequently asked this court to review that release order under 18 U.S.C. § 3145(a)(1). Although a district judge must review the magistrate judge's decision de novo, the district judge need not hold a new hearing and may instead conduct its review based on the record

that was before the magistrate judge. *See United States v. Parahams*, No. 3:13-CR-005 JD, 2013 U.S. Dist. LEXIS 25105, at *2-3 (N.D. Ind. Feb. 25, 2013).

The court set a schedule for consideration of that motion and extended the stay pending resolution of the motion. (ECF No. 17.) The court has reviewed the record of the proceedings in the Central District of California, including the audio recording of the detention hearing and Garcia-Tarabay's bond study, and the government's motion is ready for resolution.

The indictment arises from a buy-bust operation wherein co-defendants Karonn R. Hamilton and Andre J. Allen delivered a vehicle containing 25 pounds of methamphetamine to a confidential source in Brown County expecting to receive 10 kilograms of cocaine in exchange. This exchange was coordinated by Garcia-Tarabay, with whom the confidential source, Hamilton, and Allen communicated via Facetime and WhatsApp.

Garcia-Tarabay is charged with a drug offense that is punishable by at least ten years in prison and therefore is subject to a detention hearing upon the government's motion. 18 U.S.C. § 3142(f)(1)(C). In fact, he is facing a mandatory minimum of ten years in prison to a maximum of life. Therefore, the court must "presume[] that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community …." 18 U.S.C.

§ 3142(e)(3)(A).[1] However, that presumption is rebuttable. A defendant rebuts the presumption "by coming forward with some evidence that he will not flee or endanger the community if released." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). This burden "is not a heavy one to meet …." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). The rebutted presumption, however, does not vanish. "Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

Under 18 U.S.C. § 3142(g), the court considers (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person;" and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." The government bears the burden of persuasion. The court will detain a defendant only if the government proves by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required," 18 U.S.C. § 3142(e)(1); *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985), or by clear and convincing evidence "that no condition or

---

[1] Relying on an absence of controlling authority in the Ninth Circuit, Garcia-Tarabay argued at the detention hearing that the indictment alone does not trigger the presumption; the presumption applies only if the court independently finds probable cause to believe that the defendant committed a qualifying offense. The court finds that reading of the statute to be untenable. *See* Daryl J. Olszewski, *The Bail Reform Act of 1984: A Cause of and Solution to the Federal Pretrial Detention Crisis*, 52 U. Balt. L. Rev. 77, 100-01 (2022). The admittedly curious phrasing of 18 U.S.C. § 3142(e)(3) may simply be an artifact of inattentive revisions during the amendment process of the bills that eventually became the Bail Reform Act. *See id*. at fn. 198.

combination of conditions will reasonably assure the safety of any other person and the community," 18 U.S.C. § 3142(f); *United States v. Salerno*, 481 U.S. 739, 742, 107 S. Ct. 2095, 2099, 95 L.Ed.2d 697, 706 (1987).

Garcia-Tarabay has no criminal history, retains the support of his family (some of whom were present in court for his detention hearing), and works both as a seafood wholesaler and for his brother in the automotive industry in a role his attorney described as a Jack-of-all-trades. His mother offered to post significant assets (up to $50,000) to secure his release and to serve as a third-party custodian. Garcia-Tarabay was not present at the exchange and, unlike his co-defendants, is not alleged to have possessed a firearm in relation to this offense (or even in his home). These facts are sufficient to rebut the presumption of detention.

As to the risk of non-appearance, Garcia-Tarabay has connections to Mexico, having been born there and traveled there periodically, including as recently as September, re-entering the United States on foot. (ECF No. 18 at 35.) He faces strong evidence against him and a mandatory minimum of ten years in prison.[2] However, he is a United States citizen and has significant family and community connections in his local community. The details of Garcia-Tarabay's arrest are not in the record, but it is notable that the buy-bust occurred on December 15, 2025. Garcia-Tarabay was not indicted until two months later. Despite surely knowing, at a minimum, that

---

[2] Garcia-Tarabay argues that he is not subject to a ten-year mandatory minimum because "he is facially eligible for safety valve relief under 18 U.S.C. § 3553(f) given the absence of criminal history." (ECF No. 25 at 9.) However, to be eligible for the safety valve he must also not have been "an organizer, leader, manager, or supervisor of others in the offense." 18 U.S.C. § 3553(f)(4); *see also* USSG § 3B1.1(a). The record before the court raises the prospect that this provision may render the safety valve inapplicable.

something was amiss because he did not hear from his underlings after the delivery, Garcia-Tarabay apparently did not attempt to flee. He is employed and has the financial means to travel to this district as required.[3] Conditions including electronic monitoring, his family members' promises to pay $100,000 if he fails to appear, his mother's status as third-party custodian, and the surrender of all travel documents tend to mitigate the risk of non-appearance.

Granted, those conditions do not guarantee his appearance, but certainty is not required. The Bail Reform Act requires release provided there are conditions that will "*reasonably* assure the appearance of the person as required." 18 U.S.C. § 3142(b), (c)(1) (emphasis added). Under the totality of the circumstances, the government has failed to sustain its burden to prove that it is more likely than not that, if released, Garcia-Tarabay will fail to appear as required.

As for the danger to the community, much is unknown about Garcia-Tarabay's role in the charged offense and the scope of any broader conspiracy. Because it is the government's burden to prove that Garcia-Tarabay would pose a danger to the community if released, the court cannot rely on speculation to detain a defendant. There is no evidence of Garcia-Tarabay being involved in crimes beyond brokering this single transaction. For example, the government has not reported that it found large amounts of cash or controlled substances in his home. The details presented to

---

[3] Alternatively, the United States Marshals Service may be able to pay for travel of indigent persons who are otherwise unable to afford case-related travel. *See* 18 U.S.C. § 4285. In other words, a defendant should never be detained simply because of concerns he will be unable to afford travel from a district of arrest or residence to a charging district. Conversely, the court will never accept a defendant's claimed lack of resources for travel as a reason for missing any required court appearance.

the court are that Garcia-Tarabay has no criminal record, has attended some college, is the primary caretaker of his 12-year-old son, has a positive work history, and currently works two jobs. Garcia-Tarabay is not alleged to have possessed a firearm. Nor is he allegedly responsible for the firearms that his co-defendants possessed at the time of their arrests.

Garcia-Tarabay alleged role in planning and coordinating the deal, including recruiting those who delivered the drugs is obviously concerning and aggravating. So too is the quantity of drugs involved. The distribution of 25 pounds of methamphetamine is inherently dangerous in the terms of the amount of harm that such a quantity of drugs can inflict on a community. *See, e.g.*, *United States v. Huskisson*, No. 1:16-mj-00107-DML-1, 2016 U.S. Dist. LEXIS 24602, at *8 (S.D. Ind. Feb. 29, 2016). However, under the totality of the circumstances, these facts are insufficient to demonstrate by clear and convincing evidence that Garcia-Tarabay would pose a danger to the community if released.

Accordingly, **IT IS THEREFORE ORDERED** that the government's motion for revocation of the order of release is **DENIED**.

Dated at Green Bay, Wisconsin this 13th day of March, 2026.

*s/ Byron B. Conway*  
BYRON B. CONWAY  
U.S. District Judge

6